Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| LUNA COMMERCIAL II, LLC<br><br>Apelada<br><br>V.<br><br>EVELYN CARRIL CRUZ<br><br>Apelante | TA2026CE00380 | *Certiorari acogida como Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de SAN SEBASTIÁN<br><br>Caso Núm. SS2024CV00335<br><br>Sobre: Ejecución de Hipoteca: Propiedad Comercial |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda del Toro y la Jueza Lotti Rodríguez

*Grana Martínez, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 21 de mayo de 2026.

La señora Evelyn Carril Cruz solicita que revoquemos la Sentencia Sumaria que el Tribunal de Primera Instancia dictó en su contra. Luna Comercial II LLC presentó su oposición al recurso.

Este recurso se presentó incorrectamente como un certiorari. No obstante, lo atenderemos como una apelación, porque la promovente solicita la revocación de una sentencia. Por esa razón, nos referimos a la señora Carril como la apelante y a Luna Comercial II LLC como apelada.

### I

### HECHOS PROCESALES

El 20 de mayo de 2024 la parte apelada presentó una demanda sobre cobro de dinero y ejecución de prenda e hipoteca contra la apelante.[1] La demanda incluyó las alegaciones siguientes.

---

[1] Véase Entrada núm. 1, Sistema Unificado de Administración y Manejo de Casos (SUMAC) ante el Tribunal de Primera Instancia (TPI).

El 5 de marzo de 2009 la apelante suscribió un "Pagaré de Préstamo Hipotecario para Uso Personal Pagadero a Plazos con Tablas de Amortización Variables" por ciento sesenta y ocho mil noventa y nueve dólares con un centavo ($168,099.01). Los intereses se pactaron a siete puntos veinticuatro por ciento anual (7.24%). El préstamo sería pagado en cuatrocientos veinte plazos mensuales (420) consecutivos de principal e intereses ascendentes a mil ciento dos dólares con treinta y tres centavos ($1,102.33) cada uno. Los pagos comenzarían a realizarse 5 de marzo de 2009. La apelante, además, se obligó al pago de trescientos sesenta (360) plazos mensuales consecutivos de principal e interés, con intereses variables al uno por ciento (1%) sobre el *prime rate* a partir del 5 de abril de 2014. Las partes acordaron el derecho del acreedor a recuperar los gastos incurridos en las gestiones de cobro y el quince por ciento (15%) del principal por concepto de honorarios de abogado. La apelante garantizó el cumplimiento de las obligaciones mediante la entrega de los pagarés hipotecarios descritos en la demanda. Su cumplimiento fue garantizado con las propiedades inmuebles descritas en la demanda.

Otras alegaciones de la demanda son las siguientes. La apelada es tenedora legítima de dichos pagarés y declaró vencida la totalidad de la deuda, porque la apelante incumplió los pagos. Sus gestiones de cobro han sido infructuosas. La deuda reclamada es de ciento diecinueve mil novecientos sesenta y siete dólares con noventa y dos centavos, ($119,967.92) de principal, intereses al siete punto veinticuatro por ciento anual (7.24%) que al 3 de junio de 2022 eran ochenta y seis mil ciento veinte dólares con setenta y dos centavos, ($86,120.72) y continúan acumulándose, cuarenta y un mil cuatrocientos cinco dólares con setenta centavos ($41,405.70) por intereses adeudados del 28 de agosto de 2017 al 3 de junio de 2022, cuatrocientos setenta y ocho dólares con noventa y seis

centavos ($478.96) por los cargos por pagos atrasados, dos mil ochocientos cincuenta dólares ($2,850.00) por cargos por pago atrasado acumulado, en adición a cualquier adelanto realizado conforme a los términos del préstamo hipotecario, costas, gastos y honorarios de abogados pactados.

El 5 de agosto de 2024 la apelante contestó la demanda y negó que la deuda estuviera vencida. La apelante no reconoció las cantidades reclamadas y alegó que no se había cumplido con la evaluación de mitigación de pérdidas. Su representación legal adujo que la apelada no había provisto u ofrecido un proceso de mediación y se reservó el derecho a levantar cualquier otra defensa afirmativa. La apelante presentó una declaración jurada para evidenciar que el inmueble era su residencia principal.[2]

El TPI ordenó al abogado de la apelante proveer la dirección de su clienta. El 7 de agosto de 2024 el abogado cumplió la orden.[3] El 28 de agosto de 2024 la apelante pidió ser referida a mediación.[4] El 29 de agosto el tribunal hizo el referido.[5] El TPI señaló la mediación para el 22 de octubre de 2024 a solicitud de la apelante.[6] El 28 de octubre de 2024 el Centro de Mediación de Conflictos solicitó una extensión del proceso de mediación porque no había culminado.[7] El TPI declaró ha lugar la solicitud y concedió hasta el 6 de diciembre de 2024 para informar el resultado.[8] El Centro solicitó una segunda extensión de término.[9] El TPI la declaró ha lugar y concedió hasta el 15 de enero de 2025 para informar el resultado.[10]

---

[2] SUMAC, Entrada número 3 ante el TPI.
[3] SUMAC, Entrada número 16 ante el TPI.
[4] SUMAC, Entrada número 23 ante el TPI.
[5] SUMAC, Entrada número 24 ante el TPI.
[6] SUMAC, Entrada número 31 ante el TPI.
[7] SUMAC, Entrada número 32 ante el TPI.
[8] SUMAC, Entrada número 33 ante el TPI.
[9] SUMAC, Entrada número 34 ante el TPI.
[10] SUMAC, Entrada número 35 ante el TPI.

El 16 de enero de 2025 el Centro de Mediación de Conflictos informó lo siguiente. El 9 de enero el abogado de la apelante solicitó tiempo adicional para hablar con su representada. El 14 de enero de 2025 el representante legal de la apelada informó que estaría desistiendo de la mediación mediante video conferencia.[11]

El TPI ordenó a la apelada informar el curso a seguir.[12] El 25 de abril de 2025 la apelada solicitó vista de conferencia inicial, debido a que la apelante no se había expresado sobre el borrador de la estipulación.[13] El 28 de abril de 2024 el tribunal hizo el señalamiento para 25 de junio de 2025. Durante la vista, el abogado de la apelada manifestó que las partes llegaron a un acuerdo y que solo faltaba la firma de la apelante. El abogado de la apelante aclaró que su clienta no había firmado el acuerdo, porque no tenía el balance final. No obstante, indicó que discutieron el asunto y firmaría el acuerdo. El TPI concedió 20 días para firmar la estipulación.[14] Posteriormente, concedió un término final de diez días a las partes para presentar acuerdo.

El 18 de agosto de 2025, la apelada solicitó la continuación de los procedimientos. La apelada informó que envió un borrador de estipulación a la apelante conforme a los términos discutidos en mediación desde marzo de 2025. Según la apelada, aunque intentó llegar a un acuerdo no recibió respuesta de la apelante.[15] El 19 de agosto de 2025 el TPI concedió 10 días a la apelante para mostrar causa por la cual no había firmado la estipulación, ya que el 25 de junio de 2025 informó la aprobación.[16] El 16 de septiembre de 2025, el TPI sancionó económicamente al abogado de la apelante y le ordenó cumplir la orden del 19 de agosto 2025. Fue advertido de que

[11] SUMAC, Entrada número 36 ante el TPI.
[12] SUMAC, Entrada número 37 ante el TPI.
[13] SUMAC, Entrada número 41 ante el TPI.
[14] SUMAC, Entrada número 43 ante el TPI.
[15] SUMAC, Entrada número 45 ante el TPI.
[16] SUMAC, Entrada número 46 ante el TPI.

podía imponer sanciones más severas como la eliminación de las alegaciones. La apelante fue notificada directamente de la orden [17]

El 18 de septiembre de 2025 el abogado de la apelante solicitó reconsideración de la sanción. Además, informó que el 28 de agosto se comunicó con el abogado de la apelada porque la estipulación no contenía todos los acuerdos y pidió que se enmendara.[18] La apelada alegó que era la primera vez que la apelante solicitaba ser eximida de pagar el remanente, a pesar de que eso no fue parte del acuerdo de mediación.[19] El 30 de septiembre de 2025 el TPI se negó a dejar sin efecto las sanciones impuestas al abogado de la apelante y le ordenó consignarlas en 10 días. Al TPI le llamó la atención que el 25 de octubre de 2025, el abogado de la apelante informó que no había firmado la estipulación, porque faltaba el balance final. No obstante, también indicó que discutió el asunto con su clienta y firmaría el acuerdo. El TPI señaló la Conferencia con Antelación para el 5 de noviembre de 2025, porque las partes no lograron firmar la estipulación.[20]

El 20 de octubre de 2025 la apelada solicitó al TPI que dictara sentencia sumaria a su favor y declarara ha lugar la demanda. Su representación presentó copia fiel y exacta de los documentos del préstamo, certificaciones registrales de las hipotecas objeto de ejecución y una declaración jurada para acreditar la existencia de la deuda.[21] El TPI ordenó al abogado de la apelante mostrar causa por la cual no debía imponerle sanciones adicionales, por incumplir la sanción del 30 de septiembre de 2025.[22] El 2l de octubre de 2025, el TPI ordenó a la apelante expresar su posición respecto a la sentencia sumaria en veinte (20) días.[23] Su abogado consignó la

---

[17] SUMAC, Entrada número 47 ante el TPI.
[18] SUMAC, Entrada número 48 ante el TPI.
[19] SUMAC, Entrada número 50 ante el TPI.
[20] SUMAC, Entrada número 51 ante el TPI.
[21] SUMAC, Entrada número 52 ante el TPI.
[22] SUMAC, Entrada número 53 ante el TPI.
[23] SUMAC, Entrada número 54 ante el TPI.

sanción de cien dólares ($100.00), pero no contestó la moción de sentencia sumaria.[24] El 14 de noviembre de 2025 el tribunal dio por sometida para adjudicación la moción de sentencia, debido a que la apelante no compareció en el término concedido.[25]

El TPI dictó sentencia sumaria a favor de la apelada,[26] porque demostró ser la poseedora de buena fe de los pagarés con derecho a exigir su cumplimiento y acreedora de las cantidades mencionadas en la demanda. Además, concluyó que la deuda estaba vencida, liquida y exigible. Según el TPI la apelante adeudaba a la apelada la suma principal de ciento diecinueve mil novecientos sesenta y siete dólares con noventa y cinco centavos ($119,967.95), intereses al siete punto veinticuatro por ciento anuales (7.24%) anuales ascendentes a ochenta y seis mil ciento veinte dólares con setenta y dos centavos ($86, 120.72) y que continúan acumulándose hasta el pago total de la obligación, más cuarenta y un mil cuatrocientos cinco dólares con setenta centavos ($41,405.70) por intereses adeudados del 28 de agosto de 2017 al 3 de junio de 2022, cuatrocientos setenta y ocho dólares con noventa y seis centavos ($478.96) de cargos por pagos atrasados, dos mil ochocientos cincuenta dólares ($2,850) de cargos por pagos atrasados acumulados  y las costas, gastos y honorarios de abogado ascendentes al quince por ciento (15%) del principal original, según pactados.

El foro primario ordenó la ejecución de las hipotecas mediante la venta de las propiedades gravadas en pública subasta al mejor postor. El precio mínimo establecido de la primera subasta fue cincuenta y cinco mil quinientos dólares ($55,500.00) para la Propiedad A, doce mil quinientos dólares ($12,500.00) para la

---

[24] SUMAC, Entrada número 55 ante el TPI.
[25] SUMAC, Entrada número 61 ante el TPI.
[26] SUMAC, Entrada número 62 ante el TPI.

Propiedad B y veintidós mil dólares ($22,000.00) para la propiedad C. El TPI determinó que en el caso de una segunda subasta el precio mínimo será dos terceras partes del precio mínimo de la primera subasta y mitad del precio pautado para la primera subasta de ocurrir una tercera subasta. Dicho foro ordenó la venta y ejecución de cualquiera de otros bienes mueble o inmuebles de la apelante en caso de que el producto de la venta no satisfaga la totalidad de la sentencia y los gastos de la venta judicial. La sentencia se notificó a la apelante.

La apelante presentó una moción de reconsideración en la que reconoció que acordó (1) asumir los pagos del CRIM, 2) adquirir un seguro que incluyera el acreedor hipotecario, firmar un acuerdo de pago de novecientos dólares ($900.00) y (3) **pagar un ballon payment para poner fin al préstamo, transcurrido el término para amortizar la deuda.** Aunque aceptó que recibió la estipulación a finales de julio de 2025, alegó que notificó a la apelada que tenía que especificar la cantidad final de préstamo balloon.[27]

La apelada se opuso a la moción de reconsideración, porque la apelante no hizo ningún comentario a los borradores de estipulación enviados el (1) 18 de octubre de 2024, (2) 27 de febrero de 2025 y (3) 24 de junio de 2025. Además, alegó que la apelante expresó su conformidad con la tabla de amortización. La apelada enfatizó que el 25 de junio de 2025, la apelante afirmó que estaba de acuerdo con los términos de la estipulación y que firmaría el documento. Su representación legal hizo hincapié en los incumplimientos y a que fue advertida de que un nuevo incumplimiento podía conllevar sanciones mayores incluyendo la eliminación de las alegaciones. Por último, adujo que la apelante alegó por primera vez la necesidad de enmendar la estipulación.[28]

---

[27] SUMAC, Entrada número 63 ante el TPI.
[28] SUMAC, Entrada número 65 ante el TPI.

El TPI citó a una vista argumentativa para atender la reconsideración.[29] La apelante no acudió a la vista argumentativa, ni se excusó por su incomparecencia. La secretaria jurídica del juez intentó comunicarse infructuosamente con la apelante. El abogado de la apelada informó que se comunicó con la secretaria del abogado de la apelante y ella le hizo saber que estaba al tanto de la vista. El TPI declaró no ha lugar la reconsideración, debido a los incumplimientos de la apelante con los trámites y órdenes. El foro apelado advirtió que concedió amplia oportunidad a la apelante para oponerse a la moción de sentencia sumaria, pero la dio por sometida debido a su incomparecencia. El TPI determinó que sus cuestionamientos al acuerdo de mediación eran tardíos, porque debió hacerlos en su oposición a la sentencia sumaria.

El foro apelado concluyó que la apelante derrotó sus propias alegaciones. Según el TPI el 25 de junio de 2025, la apelante expresó que no firmó la estipulación porque no tenía el balance final. No obstante, el tribunal advirtió que también dijo que la discutió y que iba a firmarla. El TPI impuso una sanción de cien dólares ($100.00) al abogado de la apelante por su incomparecencia a la vista argumentativa.[30]

El abogado de la apelante presentó moción informativa urgente en la que explicó que no compareció a la vista por problemas de salud.[31] El TPI dejó sin efecto la sanción económica, pero mantuvo la determinación de declarar no ha lugar la reconsideración.[32]

Inconforme la apelante presentó este recurso en el que alega que:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA
> INSTANCIA, SALA SUPERIOR DE SAN SEBASTIAN AL
> DECLARAR NO HA LUGAR UNA RECONSIDERACIÓN

---

[29] SUMAC, Entrada número 66 ante el TPI.
[30] SUMAC, Entrada número 69 ante el TPI.
[31] SUMAC, Entrada número 67 ante el TPI.
[32] SUMAC, Entrada número 68 ante el TPI.

DE UNA SENTENCIA DICTADA SUMARIAMENTE CUANDO EXISTE UN ACUERDO ENTRE LAS PARTES QUE CARECE DE UN ELEMENTO ESENCIAL PARA SU PERFECCIONAMIENTO.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN SEBASTIAN AL NO PROCURAR EL CABAL CUMPLIMIENTO CON LA LEY 184-2012 EN BENEFICIO DEL DEUDOR HIPOTECARIO Y ANTE LA FALTA DE BUENA FE DE LA PARTE DEMANDANTE EN EL PROCESO DE MEDIACION COMPULSORIA

## II
## MOCIÓN DE SENTENCIA SUMARIA

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. *Conklin v. Passalacqua 2026 TSPR 018, Soto y otros v. Sky Caterers* 2025 TSPR 3; 215 DPR ___ (2025). No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja qué no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. *Oriental Bank v. Caballero García,* 212 DPR 671, 678-679 (2023). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V permite que cualquier parte en un litigio, solicite que el tribunal dicte sentencia sumaria a su favor sobre la totalidad del pleito o sobre cualquier reclamación solicitada. No obstante, la sentencia sumaria solo procederá cuando surge que el promovido no prevalecerá bajo ningún supuesto de hechos. *Conklin v. Passalacqua,* supra. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *BPPR v. Cable Media,* 2025 TSPR 1, 2015 DPR ___ (2025); *Cruz, López v. Casa Bella*

*y otros,* 213 DPR 980, 993 (2024), *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, según lo dispuesto en la Regla 36.2, 32 LPRA Ap. V. La Regla 36 contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando, (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Consejo Tit. v. Rocca Dev. Corp. et als.,* 215 DPR __ (2025); *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

Las declaraciones juradas en apoyo u oposición a la moción de sentencia sumaria tienen que estar basadas en el conocimiento personal del o de la declarante, contener hechos admisibles en evidencia y demostrar que el declarante está cualificado para declarar sobre su contenido. Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V. El Tribunal Supremo de Puerto Rico resolvió en *Ramos Pérez v. Univisión,* 178 DPR 200, 216 (2010), que las declaraciones juradas con solo conclusiones y sin hechos específicos que las apoyen, no tienen valor probatorio y son insuficientes para

demostrar la existencia de lo que allí se concluye. Las declaraciones juradas que son meramente conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal, son insuficientes para derrotar una moción de sentencia sumaria.

El Tribunal Supremo de Puerto Rico ha resuelto que el uso de la sentencia sumaria no es aconsejable en casos complejos en los que existe controversia sobre elementos subjetivos, de intención, propósitos mentales, negligencia o credibilidad. No obstante, eso no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención, como en los casos de discrimen, cuando de los documentos a ser considerados surge que no existe controversia de hechos materiales. *Soto y otros v. Sky Caterers,* supra.

La sentencia sumaria no procederá cuando (1) existan hechos materiales controvertidos, (2) existen alegaciones afirmativas en la demanda que no han sido refutadas, (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial o (4) no proceda en derecho. *Conklin v. Passalacqua,* supra.

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra*, y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra., Conklin v. Passalacqua,* supra. El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de

un juicio de *novo.* El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Consejo Tit. v. Rocca Dev. Corp. et als.,* supra; *Soto y otros v. Sky Caterers,* supra*; BPPR v. Cable Media,* supra; *Cruz, López v. Casa Bella y otros,* supra; pág. 924; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de *novo,* si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

## LEY PARA LA MEDIACIÓN COMPULSORIA Y PRESERVACIÓN DE TU HOGAR EN LOS PROCESOS DE EJECUCIONES DE HIPOTECAS DE UNA VIVIENDA PRINCIPAL
### LEY NÚM. 184-2012

El propósito de La Ley Núm. 184, *supra,* conocida como Ley para la mediación compulsoria y preservación de tu hogar es proteger la vivienda principal de los efectos de la crisis inmobiliaria. El legislador estableció un proceso de mediación compulsorio, previo a la ejecución de hipoteca de una vivienda principal. Exposición de Motivos de la Ley Núm. 184 *supra.* La citación a una vista de mediación es un requisito jurisdiccional en los casos de ejecución de la vivienda principal de un deudor. No obstante, ese requisito jurisdiccional no existe, cuando el deudor está en rebeldía o el tribunal eliminó sus alegaciones. El incumplimiento con la celebración de la vista de mediación priva de jurisdicción al tribunal para emitir sentencias y ordenar ventas judiciales. Durante la vista

de mediación compulsoria, el deudor hipotecario tiene que ser notificado de todas las alternativas existentes en el mercado al tipo de préstamo o inversionista, para evitar la privación y la ejecución de su vivienda principal. El Tribunal Supremo de Puerto Rico resolvió que el incumplimiento del requisito jurisdiccional de mediación compulsoria impide dictar sentencia y ordenar la venta judicial del inmueble utilizado como residencia principal. *Oriental Bank v. Caballero García,* supra, págs. 680-681.

La extensión del proceso de mediación y su resultado dependerá de la conducta de las partes. El tribunal podrá continuar el proceso judicial cuando (1) el acreedor acudió a la vista de mediación, pero el deudor no se presentó, (2) las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo, y (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación. El acreedor tiene el deber de actuar de buena fe durante el proceso y de ofrecer al deudor todas las alternativas disponibles en el mercado. Los tribunales deben asegurarse de que la mediación compulsoria se llevó a cabo conforme a nuestro ordenamiento jurídico, previo a disponer del caso por la vía judicial. El mero hecho de que las partes comparezcan a una vista de mediación, sin llegar a un acuerdo, no es suficiente para concluir que el proceso culminó infructuosamente. *Oriental Bank v. Caballero García* supra, págs. 681-682, 684.

### III

La apelante cuestiona la sentencia sumaria, porque se omitió un elemento esencial en el acuerdo de mediación, y el TPI no obró en beneficio del deudor hipotecario, a pesar de la mala fe de la apelada. Su representación legal discutió conjuntamente ambos señalamientos de error. La apelante imputa mala fe a la apelada, porque no le proveyó todas las alternativas disponibles y no

estableció claramente el monto de la deuda. Sin embargo, admite que aceptó las condiciones que le ofreció la apelada. Su representación legal argumenta que el acuerdo carece de causa y es nulo, porque no incluyó el balance final. Por último, alega que las reuniones de mediación fueron proforma y que el tribunal actuó a pesar de que estaba en juego su jurisdicción.

La apelada alega que la apelante se contradice y actúa contra sus propios actos, porque admite que aceptó el acuerdo, pero alega que carece de un elemento esencial. Además, aduce que la apelada presentó sus argumentos tardíamente en una moción de reconsideración. La apelada arguye que la omisión del balance final no convierte el contrato de mediación en nulo por falta de causa. Por último, sostiene que se cumplió el requisito jurisdiccional, porque informó a la apelada todas las alternativas disponibles y el proceso de mediación culminó con un acuerdo.

Nuestro juicio de *novo* de la totalidad de la prueba, nos convence de que el TPI dictó sentencia sumaria correctamente. La apelante ataca la sentencia sumaria con cuestionamientos al proceso de mediación, pero se equivoca. El requisito jurisdiccional de mediación se cumplió. Tan es así que ambas partes informaron al tribunal que llegaron a un acuerdo. El 28 de abril de 2024, el abogado de la apelante informó que firmaría el acuerdo, a pesar de que de no contenía el balance final. El 23 de junio de 2025, informó a la apelada (1) su acuerdo con la tabla de amortización, (2) que firmaría las estipulaciones y (3) lo notificaría al tribunal antes de la próxima vista del 25 de junio.[33] La apelada envió a la apelante el acuerdo en varias ocasiones,[34] le expresó su disponibilidad para discutir el asunto. Además, la invitó a hacer comentarios. Sin embargo, no recibió respuesta alguna de su parte. La apelante

---

[33] SUMAC, Entrada número 65 ante el TPI.
[34] SUMAC, Entrada número 50 ante el TPI.

admitió en su moción de reconsideración que aceptó el acuerdo y se obligó a **pagar un ballon payment para poner fin al préstamo.**

La representación legal de la apelante sostiene que la apelada no proveyó todas las alternativas disponibles. Sus alegaciones no tienen mérito alguno, porque son meras especulaciones que no están sustentadas por evidencia. El acuerdo de mediación tampoco es nulo, debido a la falta de causa. La apelada ha explicado que la cantidad específica del último pago es imposible de determinar hasta esa fecha, debido a que la obligación incluye el principal, intereses, adelantos y demás créditos conforme a lo pactado.

El incumplimiento de la apelante con la mediación y las órdenes del tribunal es un hecho de fácil corroboración, en el trámite procesal. La apelante se negó a firmar el acuerdo, a pesar de que se comprometió a hacerlo. El TPI le concedió múltiples oportunidades a la apelante para mostrar la causa por la que no firmó el acuerdo. Su dejadez e indiferencia, llevó al tribunal a advertirle directamente que un nuevo incumplimiento podía ocasionar sanciones más severas como la eliminación de las alegaciones. La advertencia fue directamente notificada a la apelante el 16 de septiembre de 2025. Sin embargo, la apelante hizo caso omiso y continuó incumpliendo las órdenes del tribunal. El Tribunal Supremo de Puerto Rico ha dicho que el resultado de la mediación dependerá de ambas partes. La apelante en este caso incumplió con el proceso de mediación, porque no firmó el acuerdo que se comprometió a firmar.

La apelada presentó evidencia incontrovertida de (1) que era la tenedora de los pagarés hipotecarios, (2) la existencia de la obligación, (3) el incumplimiento de la apelante y (4) que la deuda estaba vencida y era líquida y exigible. La apelante no controvirtió los hechos probados por la apelada, ya que ni siquiera se opuso a la sentencia sumaria. La moción de sentencia sumaria incluyó copia de los pagarés en los que la apelante se comprometió a pagar la

deuda. Además, de la escritura de hipoteca y la certificación registral que acreditan el gravamen hipotecario sobre el inmueble objeto de la demanda. La apelada presentó la declaración jurada del señor Rafael Hernández Miranda. El declarante tiene conocimiento de los hechos, porque es el oficial autorizado de la apelada. El señor Hernández declaró que Luna Commercial era la tenedora del pagaré descrito en la demanda y que la apelante no había pagado las sumas reclamadas, a pesar de sus gestiones de cobro. Según su testimonio en el expediente, del préstamo consta una deuda de $119,987.92 de principal, $86,120.72 de intereses al 7.24% anual que siguen acumulándose, $41,405.70 de intereses adeudados del 28 de agosto de 2017 al 3 de junio de 2022, $478.96 de cargos por pagos atrasados, $2,850.00 por pagos atrasados acumulados. Además de cualquier adelanto adicional realizado, las partidas acordadas conforme a los términos del préstamo establecidos en la escritura de hipoteca y el pagaré, las costas, gastos y honorarios de abogados ascendentes al quince por ciento del principal original y cualquier adelanto adicional realizado conforme a los términos de la hipoteca.[35]

## IV

Por los planteamientos antes esbozados, se confirma la sentencia sumaria apelada.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[35] SUMAC, Entrada núm. 52 del TPI.